FILED
2005 Jul-07  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SSE SECURITY EQUIPMENT, INC. | ) ) ) | |
| **Plaintiff,** | ) ) | |
| vs. | ) ) | **Civil Action No. CV-02-VEH-2682** |
| COMCO SYSTEMS, INC. | ) ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OF OPINION</u>

This is a civil action filed by the Plaintiff, SSE Security Equipment, Inc. ("SSE") against Comco Systems, Inc. ("Comco"). (Compl. at 1)  The action was originally filed on September 30, 2002, in the Circuit Court of Morgan County, Alabama. (Notice of Removal at 1).  The Complaint alleged four counts against Comco. (Compl.)  Count One alleged breach of contract. (*Id*. at 2).  Count Two alleged unjust enrichment. (*Id*.)  Count Three alleged equitable estoppel. (*Id*. at 3)  Count Four alleged promissory fraud. (*Id*.)

Defendant, ComCo, filed an initial Motion for Summary Judgment on October 16, 2003.  On December 22, 2003, the court re-opened discovery and ordered the

Defendant to resubmit the Motion for Summary Judgment.  On April 21, 2004, Defendant submitted the Motion for Summary Judgment that is at issue here.

In SSE's  response to Defendant's First Motion for Summary Judgment, SSE conceded that Count Two, unjust enrichment, and Count Three, equitable estoppel, were due to be dismissed.  (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 20).  The court agrees.  Accordingly, the court will **GRANT** summary judgment as to Counts Two and Three.

That leaves before the Court the Defendant's Motion for Summary Judgment on Count I, for breach of contract, and Count IV, for promissory fraud.  For the reasons stated herein, the motion for summary judgment will be **DENIED** as to Counts One and Count Four.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

## **MATERIAL FACTS**

SSE, is located in Pelham, Alabama, and has two members, Scott J. Broome, Jr. ("Broome") and Grant M. Barricklow ("Barricklow"), each of whom own 50% of the company. (Broome Dep. at 6 and 10; Barricklow Dep. at 6). SSE, sells physical

security products to financial institutions (i.e. ATMs, safe deposit boxes, drive-in windows, pneumatic tube systems, alarms, closed circuit television systems, etc.) (Broom Dep. at 9-11, 14-15, and 197-98). SSE also installs and services the products that it sells. (Broome Dep. at 14).  SSE essentially acts as a middleman, buying products from manufacturers and reselling them, usually  to financial institutions. (Broome Dep. at 15; First Amended Complaint at ¶ 1).  Defendant ComCo designs, manufactures, installs, and services pneumatic tube systems, such as drive-thru teller systems, that are used in financial institutions. (Broome Dep. at 16-18; Carder Decl. at ¶ 1).   Defendant, ComCo, is located in Lake Dallas, Texas.  (First Amended Compl. at ¶ 3).  David W. Carder is president of ComCo. (Carder Decl. at ¶ 1).

SSE first began purchasing and selling ComCo's pneumatic tube systems in 1996. (Broome Dep. at 24 and 53-54; First Amended Compl. at ¶ 3).  In or around 1997/1998, the parties orally agreed that SSE would have the exclusive right to sell ComCo's pneumatic tube systems in Alabama, an agreement which was later referenced in a fax dated August of 1998.  (Pl. Ex. 1; Broome Dep. at 67-68; 88-113; Pl. Ex. ).[1]  The fax also stated that a minimum of 10 systems must be shipped at a

---

[1]Defendant, Comco, strenuously disputes that this exclusivity agreement was ever made. Instead, Comco claims that the agreement referenced in the fax dealt only with exclusivity as to its "521 model" pneumatic system, that the "521 model" is not at issue here, and that there was no exclusive agreement, oral or otherwise, as to any other systems.  However, in reviewing the instant motion for summary judgment, the evidence must be viewed in light of the facts most

time, and that, in order to receive a discount, a minimum of 50 systems must be purchased in one year. (Broome Dep. at 89-113, 116, and Ex. 2).

Redstone Federal Credit Union is a financial institution with its main office in Huntsville, Alabama.  (Broome Dep. at 47-48, 133, 175, 187, and 224).  Grant Barricklow, one of SSE's partners, began selling banking equipment to Redstone in 1993, prior to SSE's incorporation, and continued to do so after SSE was incorporated in 1994. (Pl. Ex. 3; Barricklow Dep. at 15-16; 22).  In 1998-99, Redstone embarked on a "five to seven year" expansion plan, which included a $40 million budget (hereinafter the "Redstone expansion plan").  (Barricklow Dep. at 23-24 and 59-60).  Building Committee, Inc. ("BCI") served as the construction manager for the Redstone expansion plan.  (Barricklow Dep. at 26-28; Broome Dep. at 169).

In August of 1999, Mr. Barricklow (SSE partner) and two management employees of Redstone traveled to Houston, Texas on a day trip and met Mr. Carder to view a recently installed ComCo teller center (First Amended Compl. at 6; Barricklow Dep. at 13-24).  On that trip, SSE entered into an oral exclusive distributorship agreement with Mr. Carder of ComCo requiring that ComCo sell through SSE all products which were to be installed at any Redstone branch included

_____

favorable to the SSE.

under Redstone's expansion plan. (Barricklow Dep. at 39; Broome Dep. at 153-54).[2] The oral exclusive dealing agreement was never written as a whole. (Barricklow Dep. at 14-15; Broome Dep. at 251-252). However, SSE claims that there are several documents that show an exclusive distributorship agreement existed between SSE and ComCo. (Pl. Ex. 4-7). Mr. Carder reaffirmed at a Holiday Inn meeting in May, 2001, that an exclusive distributorship agreement existed between the parties. (Broome Dep. at 179).[3]

Following the alleged Redstone exclusive dealing agreement, Redstone initially constructed three new branches using ComCo products that were sold through SSE. (Pl. Ex. 10; Gordhamer Dep. at 23). In January of 2001, BCI's construction manager, Mr. Gordhamer, sent a letter to Mr. Carder expressing his dissatisfaction with SSE's scheduling, supervision, and service response times on the projects. (Gordhamer Dep. at Ex. 5). SSE claims that the actual reason for the letter was that Gordhamer wanted to get a lower price on the equipment and that he disliked SSE's partner, Mr. Barricklow. (Gordhamer Dep. at 126, 132-38; Carder Dep. at 103-105, 118-120).

---

[2]The "Redstone Exclusive" agreement is separate from the "Alabama Exclusive" agreement. ComCo disputes that an exclusive agreement ever existed as to either Redstone or Alabama.

[3]Mr. Carder denies the oral agreement (Carder Dep. at 15, 18-19, and 39-40).

‗‗‗‗‗On the next Redstone project, Wynn Drive Phase I, ComCo chose to supply its products to Redstone directly through BCI (the construction manager), instead of through SSE. (Barricklow Dep. at 47-48; Broome Dep. at 133-36 and 218; Carder Decl. at ¶¶ 5-6). SSE learned about these sales in Spring, 2001. (First Amended Complaint at ¶ 8). After learning of these sales, Broome and Barricklow met with Mr. Carder at a Holiday Inn near the Birmingham airport, at which time Mr. Carder agreed that SSE had the exclusive right to sell ComCo's products to Redstone and stated to the SSE partners that "you are my vendor in Alabama." (First Amended Compl. at ¶ 11; Broome Dep. at 132, 176-80, and 193). Following the Holiday Inn meeting, SSE sold ComCo's products to Redstone for a Decatur, Alabama project. (Broome Dep. at 180-183; Barricklow Dep. at 64-65; First Amended Compl. at ¶ 12). However, on the next three projects ComCo sold directly to BCI/Redstone. (Broome Dep. at 183, 189-90).[4]

The value of the goods to be sold on each of the Redstone products was well in excess of $500. (Plaintiff's Initial Disclosures at p.2; Plaintiff's Answers to Defendant's Interrogatories to Plaintiff at 2). SSE claims loss of profit for four projects that have yet to be completed, although they were part of the original

_____

[4]ComCo claims that these sales were to Redstone, but through BCI. SSE claims that these sales were direct to BCI/Redstone.

Redstone expansion plan. (Plaintiff's Initial Disclosures at p.2; Plaintiff's Answers to Defendant's Interrogatories to Plaintiff at 2).

SSE also claims that Defendant, ComCo, has engaged in "end-running" around its dealers in the past.  (Peebles Dep. at 176-179).  SSE further suspects that ComCo created a company called "ComCo Direct" as a mechanism for legitimizing this end-running in Alabama and other states.  (Peebles Dep. at 227).

**DISCUSSION**

## I.   BREACH OF CONTRACT

Both parties submit that the alleged oral contract was for the sale of goods under the Alabama Uniform Commercial Code ("UCC"), ALA. CODE OF 1975 §§ 101 *et seq*.  The court has analyzed the contract claim accordingly.  Defendant moves for summary judgment on the breach of contract claim on the grounds that the alleged oral agreement was: 1) void under the Statute of Frauds; 2) unenforceable due to vagueness, lack of mutuality, and no meeting of the minds; and 3) was of indefinite duration and terminable at-will.  Each ground will be addressed in turn.

### A.   *Statute of Frauds*

The Alabama Statute of Frauds identifies certain contracts that must be in writing to be valid.  *See* ALA. CODE OF 1975, § 8-9-2.  Subsection (1) of Alabama's

general Statute of Frauds applies to "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof." *Id.* § 8-9-2(1).

The agreement at issue here, however, does not fall within Alabama's general statute of frauds because it is a terminable at-will agreement. Agreements that are terminable at-will by either party generally are held to be capable of performance within one year of their making and, therefore, outside the Statute of Frauds. *See Abbott v. Hurst*, 643 So.2d 589, 592 (Ala. 1994). Accordingly, Alabama's general Statute of Frauds is inapplicable in this case.

The Statute of Frauds under the Alabama UCC is found at section 7-2-201 of the Alabama Code, and provides that in order for contracts for the sale of goods over $500 to be enforceable, there must be some writing that 1) is sufficient to show a transaction for goods, 2) is signed by the opposing party, and 3) contains a stated quantity. *See* ALA. CODE OF 1975 § 7-2-201(1). ComCo states that there is no writing which includes the exclusivity terms, so the agreement is void under the Statute of Frauds. SSE, on the other hand, submits that a sufficient writing exists to show offer, acceptance, and mutual assent, through piecing some various documents together, such as a fax from ComCo, which noted a " 521 exclusive in Alabama,"

9

invoices for equipment shipped, and letters/faxes back and forth about whether or not ComCo was going to continue dealing through SSE or sell direct to Redstone.

This court finds that these documents are sufficient to meet the UCC requirements because they undoubtedly show transactions for the sale of goods in certain quantities and the writings are signed by ComCo.  The Comment to Alabama Code section 7-2-201 states that the applicable writings need not contain all the material terms of the contract and all that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. There is no requirement that *all* the terms as to the agreement be in writing.  Moreover, established law provides that a series of writing may serve to satisfy the Statute's requirements.  *See Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1449 (11th Cir. 1991).  The proffered writings by SSE, along with accompanying oral evidence of exclusivity, are enough to survive summary judgment.

### B.   *Vagueness*

The Defendants' second argument is that the agreement alleged by the SSE is void because the provisions of the alleged agreement are so indefinite, uncertain, and incomplete that the reasonable intentions of the contracting parties cannot be fairly and reasonably distilled from them.  However, Alabama law "does not favor the

destruction of contracts on the ground of uncertainty.  For a court to treat a contract as void on the ground of uncertainty, the contract must be so vague and indefinite in its terms that the intention of the parties cannot be fairly and reasonably inferred from them."  *S. United Fire Ins. Co. v. Knight*, 736 So.2d 582, 585 n.2 (Ala. 1999).  Moreover, "[w]here a contract is verbal and detailed by witnesses, its terms and the intention of the parties should be found by the jury."  *MOCO, Inc. v. Gaines*, 484 So.2d 470, 472 (Ala. Civ. App. 1985) (citing *Keel v. Weinman*, 98 So.2d 611 (Ala. 1957)).

The only specific term in the contract that ComCo argues is unenforceably vague is the contract's duration.  On this point, the Alabama UCC  provides the following with regard to exclusive dealing contracts:

> (2)  Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party.
> (3)  Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party  . . . .

ALA. CODE OF 1975 § 7-2-309(2) & (3).  Because the Alabama UCC expressly provides for contracts that are effective for an indefinite duration, such contracts cannot be per se void.  Instead, section 7-2-309(2) requires that these contracts shall be valid for a reasonable time, and section 7-2-309(3) provides that they can be terminated at any time subject to reasonable notice.  Based upon these provisions, and

11

upon the general rule of Alabama law disfavoring the voiding of agreements on vagueness grounds, the Defendants' argument that it is entitled to summary judgment on vagueness grounds is without merit[5].

### C.    *Breach of Terminable At-Will Contract*

ComCo claims that, since this alleged agreement was of indefinite duration, it was terminable at-will at any time, and SSE cannot be heard to complain when ComCo has exercised its statutory right to terminate.   The law is clear that "[c]ontracts without a fixed term are terminable at the will of either party and may be terminated for any cause or no cause."  *See Hickenbottom v. Preferred Risk Mutual Ins. Co.*, 514 So.2d 881, 882 (Ala. 1987).  However, under the UCC, when the parties fail to specify the length of a terminable at-will agreement, the law provides that the agreement is for a reasonable time and that reasonable notice is required prior to termination.  *See* Ala. Code § 7-2-309(2)–(3) (see text *supra*).

---

[5]ComCo also argues for summary judgment on the ground that SSE cannot show a meeting of the minds as to the terms of the agreement.  ComCo bases the argument on the fact that Barricklow testified that he could not remember exactly what Carder said in making the alleged agreement.  However, it is well-established under Alabama law that "[q]uestions concerning the intent of parties to enter a contract are for the factfinder."  *Wadsworth House Movers, Inc. v. Salvage One Demolition, Inc.*, 474 So.2d 686, 688 (Ala. 1985).  ComCo's argument of lack of mutuality is similarly misplaced.  Section 7-2-306(2) of the Alabama Code, which obligates a seller who is a party to an agreement for exclusive dealing to use best efforts, suffices to impose obligations on SSE.  Neither argument constitutes valid grounds for an award of summary judgment.

Thus, the contract is not invalidated by virtue of the fact that it does not have a definite term. Rather, the contract is valid, but terminable at-will, provided that reasonable notice of termination is given. SSE claims that no notice of termination was given, and therefore the contract was breached. ComCo does not dispute that notice of termination was not given.

The court was unable to find any Alabama case specifically on point. However, given that the Alabama UCC is uniform as to this provision, the court is persuaded by the decisions of other courts, cited by SSE, that reasonable notice of termination is required. *See Maytronics, Ltd. v. Aqua Vac Systems*, 277 F.3d 1317, 1321 (11th Cir. 2002) ("[W]hen a party is not given reasonable notice prior to termination of a terminable at-will contract, under Florida law it is entitled to recover the profits it would have made from the contract during the notice period"); *Delta Services & Equip., Inc. v. Ryko Mfg. Co.*, 908 F.2d 7 (5th Cir. 1990) (exclusive distributorship of indefinite duration carries, under UCC 2-309(3) obligation of "such notification of the termination of a going contract relationship as will give the other party reasonable time to seek a substitute arrangement."); *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1119 (5th Cir. 1980) ("Applying the measure of damages … to the wrongful termination of a contract of indefinite duration terminable at-will upon reasonable written notice, we find that the proper measure of damages is the net profit

13

that would have been earned by the plaintiff during that period of time constituting reasonable notice of termination.").  Under this line of cases, SSE has a claim based upon ComCo's alleged breaches of the agreement which were committed without providing SSE with notice of termination of the contract.  Pursuant to this theory, SSE is limited to recovering "the profits it would have made from the contract during the notice period."  *See Maytronics*, 277 F.3d at 1321.  The period of reasonable notice is to be set by the fact-finder.  *See id.*; *King*, 618 F.2d at 1118 ("What constitutes reasonable notice of termination in this case is a question to be resolved by the jury, since reasonable notice will vary in accordance with the facts and circumstances of each case.").

Accordingly, Defendant's Motion for Summary Judgment is due to be **DENIED** as to Count One.

## II.   PROMISSORY FRAUD

The elements of fraud in Alabama based upon a misrepresentation are 1)  a false representation; 2) of a material existing fact; 3) reasonably relied upon by the plaintiff; and 4) damages proximately resulting from the false representation. *Ex Parte Michelin N. Am., Inc.*, 795 So.2d 674 (Ala. 2001).  Promissory fraud requires the plaintiff to prove, in addition to the other elements of fraud, that the defendant

14

intended not to perform the act promised and intended to deceive the plaintiff at the time of the misrepresentation.  *Byrd v. Lamar*, 846 So.2d 334, 343 (Ala. 2002).

To survive summary judgment on a promissory fraud claim, SSE must present substantial evidence that Mr. Carder had the intent to deceive SSE as to the exclusive dealership agreement(s) at the time he made such representation.  SSE's promissory fraud claim in this case is based upon a theory that Mr. Carder, at the time he agreed that SSE would be his exclusive dealer in Alabama, really did not intend for SSE to be the exclusive dealer, but rather intended to use SSE for a short time to create a relationship with Redstone so that Mr. Carder could later deal directly with Redstone. SSE has presented sufficient evidence in this case to survive summary judgment.

Mr. Peebles, a former ComCo employee, has sworn that Mr. Carder, the president of ComCo, told him essentially that he was planning to use ComCo Direct to circumvent SSE on the Redstone projects, and that Mr. Carder has a history of end-running vendors.  (Aff. of J. Peebles at ¶¶ 6, 7).   This testimony is enough to create at least a question of fact as to whether Carder intended to keep his exclusivity promise to SSE at the time it was made.

SSE has also presented sufficient evidence that it relied upon, and was damaged by the alleged misrepresentation.  But for ComCo's promise that SSE would be their exclusive distributor in Alabama, SSE may have marketed a different

manufacturer to Redstone, namely one that would have continued to deal through them at least on the Redstone projects.  SSE has suffered damages from not being allowed to finish even the Redstone projects.   As stated above, in the sale of goods, when the parties fail to specify the length of a terminable at-will agreement, the law steps in to provide that the agreement is for a reasonable time, and, although such agreements are terminable at any time, reasonable notice is required prior to termination.  *See* ALA. CODE § 7-2-309(3)*.*  What constitutes a reasonable period of notification is a question of fact for the jury to determine. *See King*, 618 F.2d at 1118.  SSE has submitted sufficient evidence to create a question of fact as to promissory fraud claim.  Count Four therefore survives summary judgment.

## CONCLUSION

Accordingly, the Motion for Summary Judgment is due to be **GRANTED** as to the unjust enrichment and equitable estoppel claims and **DENIED** as to the breach of contract and promissory fraud claims.  A separate order will be entered.

**DONE** and **ORDERED** this 7th day of July, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

16